FILED

JAN 10 2007

**USDC WP SDNY**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOSE JUAN on behalf of himself and all others
similarly situated in New York,

*Plaintiff,*

vs.

AU OPTRONICS CORP.; AU OPTRONICS
CORP. AMERICA; CHI MEI
OPTOELECTRONICS CO., LTD.; CHI MEI
OPTOELECTRONICS USA, INC.;
CHUNGHWA PICTURE TUBES, LTD.;
FUJITSU LIMITED, INC.; FUJITSU
AMERICA, INC.; HANNSTAR DISPLAY
CORPORATION; HITACHI, LTD.; HITACHI
DISPLAYS, LTD.; HITACHI AMERICA, LTD.;
IDTECH CO., LTD; IDTECH USA, INC.; IPSA
ALPHA TECHNOLOGY, LTD.; LG.PHILIPS
LCD CO., LTD.; LG.PHILIPS LCD AMERICA,
INC.; MATSUSHITA ELECTRIC
INDUSTRIAL CO. LTD.; PANASONIC
CORPORATION OF NORTH AMERICA;
MITSUBISHI ELECTRIC CORPORATION;
MITSUBISHI ELECTRIC & ELECTRONICS
USA, INC.; NEC ELECTRONICS
CORPORATION; NEC ELECTRONICS
AMERICA, INC.; NEC-LCD TECHNOLOGIES,
LTD.; SAMSUNG ELECTRONICS COMPANY
LTD.; SAMSUNG ELECTRONICS AMERICA;
SANYO ELECTRIC CO., LTD.; SANYO
NORTH AMERICA CORPORATION; EPSON
IMAGING DEVICES CORPORATION; SEIKO
EPSON CORPORATION; EPSON AMERICA,
INC.; EPSON ELECTRONICS AMERICA,
INC.; SHARP CORPORATION; SHARP
ELECTRONICS CORPORATION; SONY
CORPORATION; SONY CORPORATION OF
AMERICA; SONY ELECTRONICS, INC.; S-
LCD CORPORATION; SYNTAX-BRILLIAN
CORP.; S-LCD CORPORATION; TOSHIBA
CORPORATION; TOSHIBA AMERICA INC.;
TOSHIBA MATSUSHITA DISPLAY
TECHNOLOGY CO., LTD.; and JOHN DOES 1-
100,

*Defendants*

07 CIV. 0198

**CLASS ACTION**
**COMPLAINT**

**JURY TRIAL DEMANDED**

Case No.

Plaintiff Jose Juan, on behalf of himself and all other similarly situated persons and

entities, hereby brings this action on behalf of a class of "indirect purchasers" who purchased

Thin-Film Transistor Liquid Crystal Displays ("LCD") and products containing LCD covering a

period beginning no later than January 1, 2002 and continuing until at least December 31, 2005.

Plaintiff seeks federal injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26 for

violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, damages and other relief from

Defendants' violations of N.Y. Gen. Bus. Law § 349, *et seq.* Plaintiff, upon personal knowledge

as to his own acts and status, and upon information and belief as to all other matters, alleges the

following:

## INTRODUCTION

1.      This case arises out of a long-running conspiracy extending from January 1, 2002

and continuing until at least December 31, 2005 among Defendants and their co-conspirators,

with the purpose and effect of fixing prices, allocating market share, and committing other

unlawful practices designed to inflate the prices of LCD and products containing LCD sold

indirectly to Plaintiff and other purchasers in New York. Plaintiff brings this Class Action

pursuant to the statutes of New York, specifically, N.Y. Gen. Bus. Law § 349, *et seq.*

2.      Defendants and their co-conspirators have formed an international cartel to

illegally restrict competition in the LCD market, targeting and severely burdening consumers in

New York. The conspiracy has existed at least during the period from January 1, 2002 and

continuing until at least December 31, 2005, and has affected billions of dollars of commerce

for products commonly found in households and businesses throughout the United States,

including New York. Defendants' conspiracy has included communications and meetings in

which Defendants agreed to eliminate competition and fix the prices and allocate markets for

LCD.

3. The charged combination and conspiracy consisted of a continuing agreement,

understanding, and concert of action among Defendants and their co-conspirators, the substantial

terms of which were to fix, stabilize, and maintain prices, allocate markets and customers, and to

coordinate price increases of LCD in New York.

4. The acts by Defendants in furtherance of the conspiracy have included, upon

information and belief, the following wrongful conduct and horizontal agreements:

    (a)    participating in meetings and conversations in which Defendants and their co-conspirators discussed and agreed to prices for LCD;

    (b)    participating in meetings and conversations in which Defendants and their co-conspirators allocated markets and customers for LCD;

    (c)    participating in meetings and conversations in which Defendants and their co-conspirators discussed and agreed to refrain from engaging in competitive bidding or to submit complementary and non-competitive bids for particular contracts to supply LCD and products containing LCD to various consumers;

    (d)    exchanged sales and customer information for the purposes of monitoring and enforcing adherence to the agreements reached;

    (e)    issuing price announcements, price quotations, and general price increases in accordance with the pricing and market allocation agreements reached; and

    (f)    facilitating, effectuating, implementing, monitoring, and concealing the contract, combination, and conspiracy to raise the prices of LCD sold.

## JURISDICTION AND VENUE

5. Plaintiff brings this Class Action pursuant to the consumer protection statutes of

New York, specifically, N.Y. Gen. Bus. Law § 349, *et. seq*.

6. This Complaint is also filed under Section 16 of the Clayton Act, 15 U.S.C. § 26

to enjoin Defendants, and their officers, agents, employees, or representatives from engaging in

the unlawful contract, combination, and conspiracy to restrain trade or commerce of LCD.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332. The

matter in controversy exceeds $5,000,000 exclusive of interest and costs when the claims of individual class members are aggregated, and is between citizens of different states. Venue is proper in the United States District Court for the Southern District of New York pursuant to 15 U.S.C. §15 and §22 and 28 U.S.C. §1391, as the Defendants reside, transact business or are found within this District, and/or a substantial part of the events giving rise to the Plaintiff's claims arose in this District.

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over

Plaintiff's injunctive relief claims brought under the Clayton Act, 15 U.S.C. § 26. Jurisdiction is also proper under 28 U.S.C. § 1367 as all other claims arise from the same case or controversy as the Clayton Act claim.

9.      Personal jurisdiction comports with due process under the United States

Constitution and New York's long-arm statutes.

10.     Without limiting the generality of the foregoing, Defendants (directly or through

agents who were at the time acting with actual and/or apparent authority and within the scope of such authority) have:

   (a)    transacted business in New York;

   (b)    contracted to supply or obtain services or goods in New York;

   (c)    availed themselves intentionally of the benefits of doing business in New York;

   (d)    produced, promoted, sold, marketed, and/or distributed their products or services in New York and, thereby, have purposefully profited from their access to New York's markets;

   (e)    caused tortious damage by act or omission in New York;

   (f)    caused tortious damage in New York by acts or omissions committed outside such jurisdiction while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdiction;

(g)     committed acts and omissions which Defendants knew or should
have known would cause damage (and, in fact, did cause damage)
in New York to Plaintiff and Class members while (i) regularly
doing or soliciting business in such jurisdiction, and/or (ii)
engaging in other persistent courses of conduct within such
jurisdiction, and/or (iii) deriving substantial revenue from goods
used or consumed or services rendered in such jurisdiction;

(h)     engaged in a conspiracy with others doing business in New York
that caused tortious damage in such jurisdiction; and

(i)     otherwise had the requisite minimum contacts with New York such
that, under the circumstances, it is fair and reasonable to require
Defendants to come to this Court to defend this action.

11.     Plaintiff Jose Juan is a resident of New York. In addition, a substantial part of the

trade and commerce, as well as the arrangement, contract, agreement, trust, combination,

conspiracy, unfair or deceptive practices, and/or uniform and common course of conduct giving

rise to Plaintiff's claims, occurred within New York, including, among other things, the indirect

sale of LCD to Plaintiff and other members of the class at supra-competitive prices.

12.     As a result of the manufacture, distribution, delivery and sale of Defendants'

products to indirect purchasers within New York, directly or through their subsidiaries, affiliates

or agents, Defendants obtained the benefits of the laws of New York and the markets of New

York for their products.

## PARTIES

### A.     Plaintiff(s)

13.     Plaintiff Jose Juan is a resident of Westchester County, New York. During the

time period covered in this Complaint, Plaintiff indirectly purchased LCD from one or more of

the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-

competitive and artificially inflated prices for LCD and has been injured by reason of the illegal

conduct alleged herein.

### B.     Defendant(s)

14.     Defendant AU Optronics Corporation is a Taiwanese corporation with its

principal place of business at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan, R.O.C. Defendant AU Optronics Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

15.     Defendant AU Optronics Corporation America is a wholly owned subsidiary of Defendant Au Optronics and is incorporated in California with its principal place of business at 9720 Cypresswood Drive, Suite 241, Houston, Texas 77070. Defendant AU Optronics Corporation America produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period. Defendants AU Optronics Corporation and AU Optronics Corporation are referred to collectively as "AU Optronics".

16.     Defendant Chi Mei Optoelectronics Co., Ltd. is a Taiwanese corporation with its principal place of business at No. 3, Sec. 1, Huanshi Rd., Southern Taiwan Park, Tainan, 74147 Taiwan, R.O.C. Defendant Chi Mei Optoelectronics Co., Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

17.     Defendant Chi Mei Optoelectronics USA, Inc., is a wholly owned subsidiary of Defendant Chi Mei Optoelectronics and is incorporated in Delaware with its principal place of business at 101 Metro Drive, Suite 510, San Jose, California 95110. Defendant Chi Mei Optoelectronics USA, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period. Defendants Chi Mei Optoelectronics USA, Inc. and Chi Mei Optoelectronics Co., Ltd. are referred to collectively as "Chi Mei Optoelectronics".

18.    Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a Taiwanese corporation with its principal place of business at 1127 Hopin Road, Padeh City, Taoyuan, Taiwan, R.O.C. Defendant Chunghwa produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

19.    Defendant Fujitsu Limited, Inc. is a Japan corporation with its principal place of business at Shiodome City Center 1-5-2 Higashi Shimbashi, Minato-ku, Tokyo, 105-7123 Japan. Defendant Fujitsu produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

20.    Defendant Fujitsu America, Inc. is a wholly owned subsidiary of Defendant Fujitsu Limited, Inc. and is incorporated in California with its principal place of business at 1250 Arques Ave., M/S 124 Sunnyvale, California 94085. Defendant Fujitsu America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period. Defendants Fujitsu America, Inc. and Fujitsu Limited, Inc. are referred to collectively as "Fujitsu".

21.    Defendant Hannstar Display ("Hannstar") is a Taiwanese corporation with its principal place of business at 12Fl., No. 480, Rueiguang Road, Neihu Chiu, Taipei 114, Taiwan, R.O.C. Defendant Hannstar produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

22.    Defendant Hitachi, Ltd. is a Japanese corporation with its principal place of business at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo 100-8280 Japan. Defendant Hitachi, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

23.    Defendant Hitachi Displays, Ltd. is a wholly owned subsidiary of Hitachi, Ltd.

with its principal place of business at AKS Bldg. 5F, 6-2 Kanda Neribei-cho 3,Chiyoda-ku, Tokyo 101-0022 Japan. Defendant Hitachi Displays, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

24.     Defendant Hitachi America, Ltd. is a wholly owned subsidiary of Hitachi, Ltd. and is incorporated in New York with its principal place of business at 2000 Sierra Point Parkway, Brisbane, California 94005. Defendant Hitachi America, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period. Defendants Hitachi America, Ltd., Hitachi Displays, Ltd. and Hitachi, Ltd. are referred to collectively as "Hitachi".

25.     Defendant International Display Technology is a wholly owned Japanese subsidiary of Chi Mei Optoelectronics with its principal place of business at Nansei Yaesu Bldg., 3F, 2-2-10, Yaesu, Chuo-ku, Tokyo 104-0028 Japan. Defendant International Display Technology produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

26.     Defendant International Display Technology USA, Inc. is a wholly owned subsidiary of International Display Technology and is incorporated in California with its principal place of business at 101 Metro Drive, Suite 510, San Jose, California 95110. Defendant International Display Technology USA, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period. Defendants International Display Technology USA, Inc. and International Display Technology are referred to collectively as "IDTech".

27.     Defendant IPSA Alpha Technology, Ltd. ("IPSA Alpha") is a wholly owned

subsidiary of Hitachi, Ltd., with its principal place of business at 3732, Hayano, Mobara-shi, Chiba 297-0037 Japan. It was created as a joint venture of Hitachi, Ltd., Toshiba Corporation and Matsushita Electric Industrial Co. Defendant IPSA Alpha produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

28.     Defendant LG.Philips LCD Co., Ltd. is incorporated in South Korea with its principal place of business at 20 Yoido-dong, Youngdungpo-gu, Seoul 150-721 South Korea. Defendant LG.Philips produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

29.     Defendant LG.Philips LCD America, Inc. is a wholly owned subsidiary of LG.Philips LCD Co., Ltd. and is incorporated in California with its principal place of business at 150 East Brokaw Road, San Jose, California 95112. Defendant LG.Philips LCD America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period. Defendants LG.Philips LCD America, Inc. and LG.Philips LCD Co., Ltd. are collectively referred to as "LG.Philips".

30.     Defendant Matsushita Electric Industrial Co., Ltd. (d/b/a as "Panasonic") is a Japanese corporation with its principal place of business at 1006, Kadoma, Kadoma City, Osaka 571-8501 Japan. Defendant Matsushita Electric Industrial Co., Ltd. produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the United States, including New York, during the Class Period.

31.     Defendant Panasonic Corporation of America is a wholly owned subsidiary of Matsushita Electric Industrial Co., Ltd. and is incorporated in Delaware with its principal place of business at 1 Panasonic Way, Secaucus, New Jersey 07094. Defendant Panasonic

Corporation of America produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the United States, including New York, during the Class Period. Defendants Panasonic Corporation of America and Matsushita Electric Industrial Co., Ltd. are collectively referred to as "Matsushita".

32.     Defendant Mitsubishi Electric Corporation is a Japanese corporation with its principal place of business at Tokyo Building 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310 Japan. Defendant Mitsubishi Electric Corporation produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the United States, including New York, during the Class Period.

33.     Defendant Mitsubishi Electric & Electronics USA, Inc. is a wholly owned subsidiary of Mitsubishi Electric Corporation and is incorporated in Delaware with its principal place of business at 5665 Plaza Drive Cypress, California 90630. Defendant Mitsubishi Electric & Electronics USA, Inc. produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the United States, including New York, during the Class Period. Defendants Mitsubishi Electric & Electronics USA, Inc. and Mitsubishi Electric Corporation are referred to collectively as "Mitsubishi".

34.     Defendant NEC Electronics Corporation is incorporated in Japan with its principal place of business at 1753 Shimonumabe, Nakahara-ku, Kawasaki, Kanagawa 211-8668 Japan. Defendant NEC Electronics Corporation produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the United States, including New York, during the Class Period.

35.     Defendant NEC Electronics America, Inc. is a wholly owned subsidiary of NEC Electronics Corporation and is incorporated in California with its principal place of business at

2880 Scott Boulevard, Santa Clara, California 95050. Defendant NEC Electronics America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the United States, including New York, during the Class Period.

36.     Defendant NEC LCD Technologies, Ltd. is a Japanese corporation with its principal place of business at 1753 Shimonumabe, Nakahara-ku, Kawasaki, Kanagawa 211-8666 Japan. Defendant NEC LCD Technologies, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the United States, including New York, during the Class Period. Defendants NEC LCD Technologies, Ltd., NEC Electronics America, Inc. and NEC Electronics Corporation are referred to collectively as "NEC".

37.     Defendant Samsung Electronics Company, Ltd. is a South Korean corporation with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, South Korea. Defendant Samsung Electronics Company, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

38.     Defendant Samsung Electronics America, Inc. is incorporated in New York with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660. Defendant Samsung Electronics America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period. Defendants Samsung Electronics America, Inc. and Samsung Electronics Company, Ltd. are collectively referred to as "Samsung".

39.     Defendant Sanyo Electric Co. Ltd. is a Japanese corporation with its principal place of business at 5-5, Keihan-Hondori 2-chome, Moriguchi City, Osaka 570-8677 Japan. Defendant Sanyo Electric Co. Ltd. produced, promoted, sold, marketed, and/or distributed LCD

to consumers throughout the United States, including New York, during the Class Period.

40.     Defendant Sanyo North America Corp. is incorporated in Delaware with its principal place of business at 2055 Sanyo Avenue, San Diego, California 92154. Defendant Sanyo Electric Co. Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period. Defendants Sanyo North America Corp. and Sanyo Electric Co. Ltd. are collectively referred to as "Sanyo".

41.     Defendant Epson Imaging Devices Corporation is a Japanese corporation with its principal place of business at 6925 Toyoshina Tazawa, Azumino-shi, Nagano, Japan. It is a wholly owned subsidiary of Seiko Epson Corporation. Defendant Epson Imaging Devices Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

42.     Defendant Seiko Epson Corporation is a Japanese corporation with its principal place of business at 3-3-5 Owa, Suwa, Nagano 392-8502 Japan. Defendant Seiko Epson Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in New York, during the Class Period.

43.     Defendant Epson America, Inc. is a wholly owned subsidiary of Defendant Seiko Epson Corporation with its principal place of business at 3840 Kilroy Airport Way, Long Beach, California 90806. Defendant Epson America, Inc. manufactured, sold and distributed LCD to consumers throughout the United States, including New York, during the Class Period.

44.     Defendant Epson Electronics America, Inc. is a wholly owned subsidiary of Seiko Epson Corporation with its principal place of business at 150 River Oaks Parkway, San Jose, California 95134. Defendant Epson Electronics America, Inc. produced, promoted, sold,

marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period. Defendants Epson Electronics America, Inc., Epson America, Inc., Epson Imaging Devices Corporation and Seiko Epson Corporation are collectively referred to as " Epson".

45.    Defendant Sharp Corporation is a Japanese corporation with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522 Japan. Defendant Sharp Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

46.    Defendant Sharp Electronics Corporation is a wholly owned subsidiary of Sharp Corporation and is incorporated in New York with its principal place of business at Sharp Plaza, Mahwah, New Jersey 07430. Defendant Sharp Electronics Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period. Defendants Sharp Electronics Corporation and Sharp Corporation are referred to collectively as "Sharp".

47.    Defendant SONY Corporation is a Japanese corporation with its principal place of business at 6-7-35 Kitashinagawa, Shinagawa-ku, Tokyo 141-0001 Japan. Defendant SONY Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

48.    Defendant SONY Corporation of America is incorporated in New York and is a wholly owned subsidiary of SONY Corporation with its principal place of business at 550 Madison Avenue, 27th Floor, New York, New York 10022. Defendant SONY Corporation of America produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

49.     Defendant SONY Electronics, Inc. is a wholly owned subsidiary of SONY Corporation with its principal place of business at 12450 W. Bernardo St., San Diego, California 92127. Defendant SONY Electronics, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period. Defendants SONY Electronics, Inc., SONY Corporation of America and SONY Corporation are referred to collectively as "SONY".

50.     Defendant S-LCD Corporation ("S-LCD") is incorporated in South Korea with its principal place of business at Tangjung, Asan-City, ChungCheongMan-Do, South Korea. It is a joint venture between Samsung (50% plus one share) and SONY (50% minus one share). Defendant S-LCD produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

51.     Defendant Syntax-Brillian Corp. ("Syntax Brillian") is incorporated in Delaware with its principal place of business at 1600 N. Desert Drive, Tempe, Arizona 85281. Defendant Syntax-Brillian produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

52.     Defendant Toshiba Corporation is incorporated in Japan with its principal place of business at 1-1 Shibaura, 1-chome, Minato-ku, Tokyo 105-8001 Japan. Defendant Toshiba Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New York, during the Class Period.

53.     Defendant Toshiba America, Inc. is a wholly owned subsidiary of Toshiba Corporation with its principal place of business at 1251 Avenue of the Americas, Suite 4110 New York, New York 10020. Defendant Toshiba America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including New

York, during the Class Period. Defendants Toshiba America, Inc. and Toshiba Corporation are referred to collectively as "Toshiba".

54.    Defendant Toshiba Matsushita Display Technology Co., Ltd. is a Japanese joint venture between Toshiba and Matsushita with its principal place of business at Rivage Shinagawa, 4-1-8 Konan, Minato-ku, Tokyo 108-0005 Japan. Defendant Toshiba Matsushita Display Technology Co., Ltd. produced, promoted, sold, marketed, and/or distributed LCD to customers throughout the United States, including New York, during the Class Period.

55.    Whenever an allegation is made in reference to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the corporation's management, direction, control, or business affairs. Moreover, Defendants acted as each other's agents or as members in a joint venture with respect to their conspiracy, and any Defendant that is a subsidiary of a foreign parent acted as an agent for its parent company with respect to United States sales of LCD.

56.    The acts charged in this Complaint have been done by the aforesaid Defendants and were ordered and performed by the Defendants' officers, directors, agents, employees or representatives while actively engaged in the management, direction, control or transaction of said Defendants' business or affairs.

## ADDITIONAL DEFENDANTS

57.    As additional information may come to light, Plaintiff reserves the right to add other Defendants as they become known to him.

58.    The acts alleged in this Complaint were, upon information and belief, authorized, ordered or done by officers, agents, employees, or representatives of each Defendant while

actively engaged in the management of its business or affairs.

## CO-CONSPIRATORS

59.    Various other individuals, partnerships, corporations, organizations, firms, and associations not yet made defendants in this Complaint (the "Co-Conspirators") and presently unknown to Plaintiff, participated as co-conspirators in the violation alleged herein, and performed acts and made statements in furtherance of the conspiracy.

60.    The true names and capacities, whether individual, corporate, associate, representative, or otherwise of defendants named herein as DOES 1 through 100 are unknown to Plaintiff at this time, and are therefore sued by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of DOES 1 through 100 when they become known to Plaintiff. Each of DOES 1 through 100 is in some manner legally responsible for the violations of law alleged herein.

61.    The acts charged in this Complaint as having been done by Defendants and the DOE Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management of the Defendants' businesses or affairs.

## CLASS ACTION ALLEGATIONS

62.    This action is brought by Plaintiff on behalf of himself, and pursuant to Rule 23 of the Federal Rules of Civil Procedure, as representative of a class ("the Class"). In particular, Plaintiff asserts that a class action is appropriate under Rule 23(b)(3).

63.    The Class is defined as:

> All persons residing in New York who indirectly purchased LCD
> and/or or products containing LCD manufactured and sold by one
> or more of the Defendants during the Class Period. The class of
> indirect purchasers of these products includes consumers and
> businesses who have purchased LCD and/or products containing
> LCD. Excluded from the Class are: all federal, state, or local

> governmental entities; Defendants' subsidiaries and affiliates; all
> persons who purchased LCD directly from any Defendant or from
> any other manufacturer of LCD.

64.     Although the exact size of the Class is unknown, the total number of Class

members is in the thousands as most consumers have purchased LCD and/or products containing

LCD. Based upon the nature of the trade and commerce involved, joinder of all Class members

would be impracticable.

65.     Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly

and adequately protect the interests of the Class. Plaintiff has no conflict with any other Class

member and has retained competent counsel experienced in class action and antitrust litigation.

66.     Common questions of law and fact exist, including:

(a)     Whether Defendants conspired with each other and others
to fix, raise, stabilize or maintain the prices of LCD;

(b)     Whether Defendants' acts were unfair or deceptive;

(c)     Whether the combination or conspiracy caused the prices of
LCD and products containing LCD to be higher than they
would have been in the absence of Defendants' conduct;

(d)     The operative time period for the conspiracy;

(e)     Whether Defendants' conduct caused injury to the business
or property of Plaintiff and the Class, and if so, the
appropriate measure of damages;

(f)     Whether Defendants' conduct violated N.Y. Gen. Bus. Law
§ 349, *et. seq*;

(g)     Whether Defendants actively concealed the violation
alleged herein; and

(h)     The appropriate nature of the class-wide equitable relief.

These and other questions of law and fact are common to the Class and predominate over any

questions affecting only individual Class members.

67.     Class action treatment is a superior method for the fair and efficient adjudication

of the controversy described herein. The class action vehicle provides an efficient method for

enforcement of the rights of the Plaintiff and the Class members, and such litigation can be fairly

managed. Plaintiff knows of no unusual problems of management or notice.

68.     It is desirable for the claims of the Plaintiff and the Class members to be consolidated into a single proceeding to provide all claimants with a forum in which to seek redress for the violations of the laws of New York and the United States.

69.     The difficulties that may exist in the management of the class action are far outweighed by the benefits of the class action procedure, including but not limited to, providing claimants with a suitable method for the redress of their claims.

## FACTUAL ALLEGATIONS

### A.     Background of the LCD Industry

70.     LCD is a thin, flat display device consisting of pixels aligned in front of a reflector or source of light. An LCD generally consists of a mask of colored pixels and a layer of liquid crystal solution sandwiched between two panes of polarized glass. When an electric current is passed through the liquid crystals, the crystals react, creating electric fields. By manipulating the state of liquid crystals using electrical charges, the liquid crystals act like tiny shutters, opening or closing in response to the stimulus, thereby allowing light to pass through the colored pixels. As a result, the LCD is illuminated, thus creating an image.

71.     LCD technology was introduced during the early 1970s; however, it was used commercially for laptop computer screens during the late 1980s. Today, LCD is used in a variety of electronic products including, but not limited to, flat-panel televisions and computer monitors, laptop computers, digital cameras, cell phones, microwaves, digital personal assistants and digital music players.

72.     The LCD market is conducive to the kind of anticompetitive practices alleged in this Complaint. The market is oligopolistic, is characterized by high manufacturing costs, and has high technological barriers to entry. The high barriers to entry are due to the capital-

intensive nature of the display industry and the high volumes of production required to achieve economies of scale.

73.   According to reports, the worldwide market for LCD panels was worth $53 billion in 2004. Other estimates suggest that the market is worth approximately $70 billion. Most LCD panels are manufactured in Taiwan and South Korea. For the first quarter of this 2006, Taiwan accounted for 52.2% of the LCD panel shipments, while South Korea had a 37.4% share. Last year, South Korea led with a 48.8% share against Taiwan's 41.8% share.

74.   LG.Philips and Samsung have consistently been the industry's leading manufacturers. In 2005, LG.Philips captured a 21.4% market share of LCD panel production sized ten inches or larger, edging out Samsung, which had a 20.9% market share. Following closely behind were AU Optronics with 14.5%, Chi Mei Optoelectronics with 11.8%, and Chunghwa Picture Tubes with 7.3%. Thus far in 2006, however, Samsung appears to have overtaken LG.Philips as the largest manufacturer of LCD panels—a result of the joint venture operation with SONY to form S-LCD Corp. Trailing close behind is AU Optronics. With its acquisition of Quanta Display in 2006, the company's estimated market share rises to approximately 20.2%, according to industry expert reports.

75.   Prior to the Class Period, LCD prices in the United States decreased significantly. New competitors entered the LCD market during this period. Moreover, the increased manufacturing capacity resulting from newly constructed advanced generation factories and efficiency in production equipment and processes contributed to these price declines. The LCD manufacturers' saw their profit margins squeezed from falling average selling prices. Prices had dropped so precipitously that producers were actually selling at production cost, without making any profit.

76.   These efficiencies did, however, allow for the increased use of finished LCD in

computer monitors and laptop notebooks, flat panel televisions and cell phones. Upon
information and belief, the average selling price of LCD rose significantly from 2003 to 2004
largely because of collusion among the Defendants. During this period, Defendants agreed to
reduce supply in order to artificially raise prices.

77.    Defendants' collusion operated to stymie the decline in prices prior to 2003, such
that they raised prices to supra-competitive levels. By 2003, prices climbed. For instance, the
average price of LCD larger than 10 inches increased from $219 in the second quarter to $271 in
the fourth quarter. At the end of 2003, the market was valued at $33 billon, a significant increase
from $29 billion in 2002. This increasing average price of LCD continued to rise in 2004, hitting
an all-time high. According to industry analysts, the market was valued at $36 billion in 2004.
It was the collusive activity among the Defendants and their Co-Conspirators that kept the prices
at supra-competitive levels and lead to the increase in value of the overall LCD market.

78.    The LCD industry has undergone consolidation throughout the Class Period,
leading to fewer LCD manufacturers in the market. Examples of this consolidation include AU
Optronics' acquisition of Quanta Display and the collaboration by industry leaders to create
ventures such as S-LCD, Toshiba Matsushita Display Technology and Sanyo Epson Imaging
Devices.

79.    The market for LCD products is large and steadily increasing in size. For example,
shipments of LCD displays is predicted to rise to 154.3 million units in the first half of 2007, which is
a 6.3% increase from the 145.2 million units shipped during the latter half of 2006, and is a 23.7%
increase from the first half of 2006.

## B.    Investigation of the LCD Industry

80.    The United States Department of Justice ("DOJ") recently launched an investigation

into anticompetitive practices by LCD manufacturers. On or about December 8, 2006, the DOJ subpocnaed Defendants LG.Philips, Samsung, Sharp and Chi Mei Optoelectronics. A spokesperson for the DOJ confirmed that an investigation is underway in the LCD industry and that the DOJ is cooperating internationally with other antitrust authorities. Several Defendants such as LG.Philips, Sharp and Samsung have acknowledged publicly that the DOJ has subpoenaed them about the LCD investigation.

81.     Authorities in the European Union, Japan, South Korea and Taiwan have launched similar probes in coordination with the DOJ investigation. On December 12, 2006, the European Commission confirmed that it had sent formal requests for information to a number of LCD producers. Japan's Fair Trade Commission also confirmed that it is investigating allegations of price-fixing against LG.Philips, Samsung, AU Optronics, Sharp, Seiko Epson, Toshiba Matsushita Display Technology, NEC, Hitachi, and IPS Alpha. Defendant LG.Philips publicly acknowledged on December 11, 2006, that it is being investigated in various countries: "[A]s part of an investigation of possible anticompetitive conduct in the LCD industry, officials from the Korean Fair Trade Commission visited the offices of LG.Philips LCD in Seoul, Korea." Defendants Samsung, Sharp and Chi Mei Optoelectronics have also confirmed that they are under investigation by competition regulators overseas.

82.     Price fixing among manufacturers in the high-technology industry has also occurred in other product markets, as evidenced by the most recent conspiracy in the Dynamic Random Access Memory market and the alleged conspiracy in the Static Random Access Memory market. Not surprisingly, many of the Defendants in these other cases are also implicated in this new investigation of the LCD industry such as Defendants Samsung and Toshiba.

## TRADE AND COMMERCE

83.     The activities of Defendants and their Co-Conspirators, as described herein, were within the flow of, were intended to, and did have a substantial effect on the commerce of LCD throughout the United States, including New York.

84.     During the Class Period, Defendants manufactured and sold substantial quantities of LCD and/or products containing LCD to businesses and consumers throughout the United States, including New York.  Those businesses resold and/or incorporated the LCD into other products including, but not limited to, flat-panel televisions and computer monitors, laptop computers, digital cameras, cell phones, microwaves, digital personal assistants and digital music players and then marketed and sold those goods to businesses and consumers throughout the United States, including New York.

85.     The contract, combination, and conspiracy consists, upon information and belief, of a continuing agreement, understanding, and concert of action between and among Defendants and their Co-Conspirators, the substantial terms of which were and are to fix, stabilize, and maintain prices, allocate markets and customers, and to coordinate price increases for the sale of LCD throughout the United States, including New York.

86.     The acts in furtherance of the conspiracy by Defendants have included, on information and belief, the following wrongful conduct and horizontal agreements:

> (a)     participating in meetings and conversations on a periodic basis since at least January 1, 2002 in which Defendants and their Co-Conspirators discussed and agreed to fix, raise, stabilize, and maintain the prices for LCD;
>
> (b)     participating in meetings and conversations on a periodic basis since at least January 1, 2002 in which Defendants and their Co-Conspirators discussed and agreed to allocate markets and customers for LCD;

(c)   participating in meetings and conversations on a periodic basis since at least January 1, 2002 in which Defendants and their Co-Conspirators discussed and agreed to refrain from engaging in competitive bidding, or to submit complementary and non-competitive bids, for particular contracts to supply LCD and/or products containing LCD to various customers;

(d)   exchanging sales and customer information for the purposes of monitoring and enforcing adherence to the agreements reached;

(e)   issuing price announcements, price quotations, and general price increases in accordance with the pricing and market allocation agreements reached; and

(f)   facilitating, effectuating, implementing, monitoring and concealing the contract, combination, and conspiracy to raise the prices of LCD sold.

87.   For the purposes of formulating and effectuating the aforesaid contract, combination, and conspiracy, Defendants and their Co-Conspirators did those things which they conspired to do.

## IMPERMISSIBLE MARKET EFFECTS

88.   The contract, combination, and conspiracy alleged herein had the following effects, among others:

(a)   prices paid by Plaintiff and the Class members for LCD and products containing LCD were fixed, raised, maintained, and stabilized at artificially high and noncompetitive levels;

(b)   indirect purchasers of LCD and products containing LCD were deprived of the benefits of free and open competition; and

(c)   competition between and among Defendants and their Co-Conspirators in the sale of LCD and/or products containing LCD was unreasonably restrained.

89.   As a result, Plaintiff and the Class members have been injured in their businesses and property in that they have not only been deprived the benefits of fair and open competition on the merits but have paid more for LCD and/or products containing LCD than they otherwise

would have paid in the absence of Defendants' unlawful contract, combination, and conspiracy.

## FRAUDULENT CONCEALMENT

90.    Plaintiff hereby adopts and incorporates by this reference each of the preceding paragraphs as fully set forth herein.

91.    Throughout the Class Period, Defendants and their Co-Conspirators engaged in a successful, illegal price-fixing conspiracy that was by its nature self-concealing and that effectively, affirmatively, and fraudulently concealed Defendants' unlawful combination, conspiracy, and acts in furtherance thereof from Plaintiff and the Class members.

92.    Although Plaintiff exercised due diligence throughout the Class Period, he could not have discovered Defendants' unlawful scheme and conspiracy at an earlier date because of Defendants' effective, affirmative, and fraudulent concealment of their activities. Defendants' wrongful conduct was carried out in part through means and methods that were designed and intended to avoid detection, and which in fact, successfully precluded detection.

93.    Defendants' fraudulent concealment included public statements that falsely attributed wild price fluctuations of LCD to natural reasons such as seasonal ebb and flow and a highly competitive market. Defendants also instructed their United States entities to offer similar false reasons to explain price increases with to customers in United States, including New York. In fact, those fluctuations were due to Defendants periodic withholding of the supply of LCD to create an artificial supply shortage, which in turn generated a level of artificial demand, driving up prices.

94.    Plaintiff and the Class members had no reason to disbelieve Defendants' explanations of the pricing behavior of these products. Indeed, in some instances Defendants' explanations involved proprietary or otherwise non-public information within Defendants'

exclusive control, leaving Plaintiff and the Class members without means to verify their

accuracy. Plaintiff did not know nor could he have known that Defendants' prices for LCD were

artificially inflated and maintained by virtue of Defendants' illegal price-fixing conspiracy and

that Plaintiff and the Class members were paying higher prices for LCD and/or products

containing LCD than they would have paid in a competitive market.

95.    Plaintiff has exercised due diligence by promptly investigating the facts giving

rise to the claims asserted herein upon having reasonable suspicion of the existence of

Defendants' conspiracy, and by seeking discovery as to the matters asserted herein, to the extent

permitted by law.

## COUNT I
### (Violation of New York General Business Law Section 349)

96.    Plaintiff hereby adopts and incorporates by this reference each of the preceding

paragraphs as fully set forth herein.

97.    Defendants' actions described herein constitute deceptive acts or practices in New

York that are actionable under N.Y. Gen. Bus. Law § 349, *et seq*.

98.    By reason of Defendants' deceptive acts or practices in New York, Plaintiff and

other Class members who indirectly purchased LCD have been injured because, among other

reasons, they have paid more for LCD and/or products containing LCD than they would have

paid in the absence of the Defendants' deceptive acts or practices.

99.    Consumers in New York have been and will continue to be injured in their

business and property by Defendants' deceptive acts or practices.

100.    As a result of Defendants' deceptive acts or practices, Plaintiff and the class who

acted as consumers have sustained damages in an amount to be determined at trial. Plaintiff and

the Class members seek actual damages for their injuries caused by Defendants' deceptive acts

or practices. Without prejudice to the contention that Defendants' unlawful conduct was willful

and knowing, Plaintiff and the Class members hereby waive any discretionary damages, above

and beyond actual damages, that may be awarded by the court under N.Y. Gen. Bus. Law §

349(h), including but not limited to an increase in the award of damages to three times actual

damages up to one thousand dollars.

## COUNT II

### (Unjust Enrichment and Disgorgement of Profits)

101.    Plaintiff hereby adopts and incorporates by this reference each of the preceding

paragraphs as fully set forth herein.

102.    Defendants benefited from their unlawful acts through the overpayment for LCD

and products containing LCD by Plaintiff and the Class members. Under common law

principles of unjust enrichment it would be inequitable for Defendants to be permitted to retain

the benefits of these overpayments, which were conferred by Plaintiff and Class members and

retained by Defendants.

103.    Plaintiff seeks disgorgement of all profits resulting from such overpayments and

establishment of a constructive trust from which Plaintiff and Class members may seek

restitution.

## COUNT III
### (Violation of Clayton Act for Injunctive Relief)

104.    Plaintiff hereby adopts and incorporates by this reference each of the preceding

paragraphs as fully set forth herein.

105.    Beginning by at least January 1, 2002 and continuing until at least December 31,

2005, Defendants entered into a continuing agreement, understanding, and conspiracy in restraint

of trade to artificially raise, fix, maintain, and/or stabilize prices for LCD in New York and the

United States.

106.     Defendants' conduct in restraint of trade had the intent, and effect, of maintaining artificially high, and anticompetitive prices of LCD.

107.     Defendants and Co-Conspirators did those things they colluded and conspired to do, including, but not limited to, the allegations set forth herein.

108.     Defendants' illegal combination and conspiracy as alleged herein had the effect of (i) restraining, suppressing and/or eliminating competition; (ii) artificially fixing, raising, maintaining, and/or stabilizing prices at high, supra-competitive levels; and (iii) depriving consumers of free and fair competition on the merits.

109.     It is in the best interest of the public to enjoin, pursuant to the Clayton Act, 15 U.S.C. § 26 Defendants and their officers, agents, employees, or representatives from engaging in the unlawful contract, combination, and conspiracy in restraint of trade or commerce of LCD.

110.     Plaintiff and the Class have and will continue to be injured by Defendants' conduct in violation of the antitrust laws of the United States and N.Y. Gen. Bus. Law § 349, *et seq.*, in the absence of injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, and respectfully requests the Court:

1.     Certify this action to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and direct that reasonable notice be given to Class members;

2.     Declare that the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

a.   A deceptive act or practice in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

identified in the First Count for Relief herein; and

b.  Acts of unjust enrichment as set forth in the Second Count for Relief herein.

c.  In violation of Section 16 of the Clayton Act, 15 U.S.C. § 26 for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

3.     Award Plaintiff and Class members actual damages in an amount to be proved at trial as a result of the wrongful conduct alleged, plus interest and costs.  Plaintiff expressly waives all other damages available under N.Y. Gen. Bus. Law § 349, *et seq*.

4.     Award Plaintiff and Class members restitution and disgorgement of profits obtained by Defendants as a result of their violations of common law principles prohibiting their acts of unfair competition and acts of unjust enrichment;

5.     Award Plaintiff and Class members the costs of the suit, including reasonable attorney's fees;

6.     Award Plaintiff and the Class members a permanent injunction under Section 16 of the Clayton Act, 15 U.S.C. § 26, enjoining Defendants, and their officers, agents, employees, or representatives from engaging in this unlawful contract, combination, and conspiracy in restraint of trade or commerce;

7.     Award Plaintiff and the Class members pre-judgment and post-judgment interest on the above sums at the highest rate allowed by law; and

8.     Grant such other, further or different relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims for which he is entitled to a jury trial.


DATED: Bedford Hills, New York
            January 10, 2007

By: _____

Kenneth G. Walsh (KW 1654)
STRAUS & BOIES, LLP
2 Depot Plaza, Suite 203
Bedford Hills, New York 10507
Telephone: (914) 244-3200
Facsimile: (914) 244-3260

David Boies, III
Timothy D. Battin
Ian Otto
Nathan Cihlar
STRAUS & BOIES, LLP
4041 University Drive, Fifth Floor
Fairfax, Virginia 22030
Telephone: (703) 764-8700
Facsimile: (703) 764-8704


*Attorneys for Plaintiff Class*